IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALICIA M. LIGHTFOOT, | ) | CASE NO. 1:10 CV 1273 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Alicia M. Lightfoot, for supplemental security income due to a disability.[2] The Commissioner has filed an answer.[3] Following my order outlining the relevant issues,[4] the Commissioner also filed a brief on the merits.[5] Lightfoot has likewise filed a brief on the merits,[6] to which the Commissioner has replied.[7] Following the briefing, both parties participated in a telephonic

---

[1] Non-document order of June 7, 2010.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 12.

[5] ECF # 16.

[6] ECF # 19.

[7] ECF # 20.

oral argument on the issues presented.[8] On that record, and for the reasons that follow, I will recommend that the matter be remanded for further proceedings.

## Course of Proceedings

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, concluded first that Lightfoot had not engaged in substantial gainful activity since the date of her application.[9] Next, the ALJ found that Lightfoot had the following severe mental impairments: polysubstance dependence; bipolar II disorder; major depressive disorder, moderate, recurrent; anxiety disorder; post-traumatic stress disorder; and borderline and antisocial personality disorder.[10] However, relying on the testimony of a medical expert, the ALJ found that Lightfoot had no other medically determinable physical impairments.[11]

The ALJ did find that Lightfoot's impairments, including her substance abuse disorder, met Listing 12.04 of 20 C.F.R., Part 404, Subpart P, Appendix I.[12] In arriving at this finding, the ALJ stated that "full probative weight" had been given to the opinion of Dr. N. McNamara, M.D., Lightfoot's treating psychiatrist.[13] Moreover, the ALJ noted that

---

[8] ECF # 22.

[9] Tr. at 13.

[10] *Id*.

[11] *Id*. at 14-15.

[12] *Id*. at 15-16.

[13] *Id*. at 16.

Lightfoot's mental impairments, including the substance abuse disorders, were responsible for "at least two 'marked' limitations" found in Lightfoot.[14]

Next, the ALJ determined that if Lightfoot stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities; therefore, Lightfoot would continue to have a severe mental impairment or combination of impairments.[15] That said, the ALJ further found that if Lightfoot stopped the substance abuse, Lightfoot would not have an impairment or combination of impairments that met or medically equaled any listing.[16]

The ALJ decided that, if Lightfoot stopped the substance abuse, she would have the residual functional capacity to perform a full range of work at all exertional levels, but with nonexertional limitations.[17] Although the ALJ found that even by stopping the substance abuse Lightfoot could not perform her past relevant work,[18] he also found, relying on the testimony of a vocational expert, that if Lightfoot stopped the substance abuse, she could perform a significant number of jobs and was, therefore, not disabled.[19]

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 18.

[18] *Id.* at 20.

[19] *Id.* at 20-21.

As distilled in the briefs and by the oral argument, the relevant issue presented here is whether the ALJ properly evaluated the opinion of Dr. McNamara. In particular, although the ALJ gave that opinion full weight in determining that Lightfoot was disabled with substance abuse, it is not clear if the ALJ understood that Dr. McNamara's opinion literally evaluated Lightfoot without substance abuse or if Dr. McNamara so intended such an opinion.

## Analysis

### A. The treating physician rule

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

---

[20] 20 C.F.R. § 404.1527(d)(2).

[21] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[27] *Id.* at 535.

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[29] The court noted that the regulation expressly contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[34] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

[34] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[36] Second, the ALJ must identify for the record evidence supporting that finding."[37] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[38]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[35] *Id.*

[36] *Wilson*, 378 F.3d at 546.

[37] *Id.*

[38] *Id.*

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in § 1527(d)(1)-(6).

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[39] set out some standards for how ALJ's should employ the treating physician rule. In *Blakley*, the ALJ failed to mention the opinion of one treating physician altogether;[40] discounted the opinion of another as inconsistent with other evidence of record;[41] and failed to disclose whether the opinion of a third was weighed as a treating physician.[42] On these facts showing non-compliance by the ALJ with the rule as to treating physicians, *Blakley* expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[43] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[44]

---

[39] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009).

[40] *Id*. at 407-08.

[41] *Id*. at 408.

[42] *Id*.

[43] *Id*. at 409-10.

[44] *Id*. at 410.

**B.     Application of the treating physician rule – The uncertainty as to the ALJ's understanding of the basis for the opinion of Dr. McNamara, the treating psychiatrist, and as to the basis upon which Dr. McNamara rendered that opinion, deprives the ALJ's finding at step two of the sequential evaluation process of the support of substantial evidence.**

Although the ALJ's decision here, for the most part, is well-crafted with extensive citation to the medical record, it flounders when dealing with the opinion of Dr. McNamara, Lightfoot's treating psychiatrist. As noted, Dr. McNamara offered the opinion that Lightfoot's mental impairments were so severe that she would meet a listing. The ALJ gave that opinion full probative weight.

The root of the difficulty lies with the uncertainty on the record of the ALJ's and Dr. McNamara's understanding of the form used by Dr. McNamara for her evaluation. Specifically, the assessment form signed by Dr. McNamara directs that "[i]f drug addiction and alcoholism (henceforth 'DAA') is a contributing factor material to the claimant's impairment, please confine your assessment to his condition if he stops using alcohol/drugs; if it's not possible to separate the mental restrictions and limitations imposed by DAA from the other mental disorders, there is not a material finding."[45] Thus, according to the literal language of the form, Dr. McNamara confined her opinion to Lightfoot's condition if she stopped using alcohol or drugs, or if such use was not material to the evaluation.

It is not at all clear that the ALJ interpreted the opinion according to its own terms. The ALJ's textual note states that Dr. McNamara's opinion was being given full probative

---

[45] *Id*. at 290.

weight for the period during which Dr. McNamara treated Lightfoot[46] – a period when the record shows that Lightfoot was abusing drugs. Accordingly, it is arguable but by no means clear that the ALJ understood Dr. McNamara's opinion as one based on impairments with substance abuse, contrary to the form's express language.

Stated differently, the ALJ did not articulate that the written opinion was to be read – and credited – in accord with its limiting terms. If it was to be read and credited as such, it would mean that Lightfoot's treating physician concluded that, without substance abuse, Lightfoot met a listing, or, alternatively, that her substance abuse was not material to the assessment of her impairments. In short, given appropriate controlling weight and read exactly under its terms, this opinion would have required a finding of disability. To the extent that the ALJ apparently did not read Dr. McNamara's opinion in conformity with its own terms – *i.e.*, as one relating to Lightfoot's condition while abusing substances – then conformity with the treating physician rule and articulation requirements would necessarily require additional explanation and articulation concerning how this opinion was being read and weighed.

Lightfoot has also challenged the ALJ's residual functional capacity finding for failure to include exertional limitations. She further argues that the ALJ should have called a psychiatrist or psychologist to testify as a medical expert. Because I recommend that the matter be remanded for reconsideration and proper articulation as to Dr. McNamara's report, these can and should be revisited on remand.

---

[46] *Id.* at 16.

## Conclusion

Based on the foregoing, I recommend that the decision of the Commissioner denying Lightfoot's application for supplemental security income be vacated and that the case be remanded to the Commissioner for reconsideration of Dr. McNamara's treating physician evaluation, for proper articulation with respect to that opinion, and for findings at step two (and, if appropriate, steps four and five) consistent with this report.

Dated:  August 10, 2011                         s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[47]

---

[47] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).