UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ALICIA M. LIGHTFOOT,** | ) | **CASE NO. 1:10CV1273** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL ASTRUE,** | ) | **AND ORDER** |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

This matter is a civil action for judicial review of an administrative action denying supplemental security income due to disability to Plaintiff Alicia M. Lightfoot ("Plaintiff" or "Lightfoot") pursuant to 42 U.S.C. § 405(g). Pursuant to Local Rule 72.2(b), this matter was automatically referred to a Magistrate Judge for a Report and Recommendation, and on August 10, 2011, Magistrate Judge William H. Baughman, Jr. submitted his Report and Recommendation ("R&R"). The R&R recommends that this Court vacate the decision of the Administrative Law Judge ("ALJ") denying Lightfoot's claim for disability benefits and remand this case to the Defendant Commissioner of Social Security Michael Astrue ("Defendant" or "Commissioner") for reconsideration of her treating physician's evaluation, for proper articulation with respect to that opinion, and for findings consistent with the doctor's opinion. (Doc. 23.) The Commissioner filed Objections to the Magistrate Judge's Report and Recommendation on August 24, 2011. (Doc. 24.) Lightfoot has filed a reply. (Doc. 26.)

This Court's review of the R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* review as to those portions of the document to which objection is made. Because the Commissioner objected only to certain portions of the R&R, the remainder—including its account of the factual and procedural history of the case—is, except as otherwise

noted, hereby accepted as written. Upon *de novo* review of those portions of the R&R to which the Commissioner has made objection, this Court hereby **ACCEPTS** the R&R of the Magistrate Judge. The decision of the ALJ, which has become the final decision of the Commissioner pursuant to 20 C.F.R. § 416.1481, is **VACATED** and this matter is **REMANDED** with instructions as set forth below.

Review of the ALJ's determination, in turn, is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.,* 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)). However, even when there is substantial evidence, "a 'decision of the Commissioner will not be upheld where the [Social Security Administration] (SSA) fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.,* 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec. Admin.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See Wilson v. Comm. of Soc. Sec.,* 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was

not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 20 C.F.R. § 416.905(a). Consideration of disability claims follows the familiar five-step review process. 20 C.F.R. § 416.920(a)(4). The burden of proof is on the claimant through the first four steps; the burden shifts then to the Commissioner in step five. However, the claimant bears the ultimate burden of proving that he or she is entitled to disability benefits. 20 C.F.R. § 416.912(a).

An extra step is required if a claimant is disabled and suffers from alcoholism or drug addiction. In such a case, the Commissioner must determine whether the alcoholism or drug addiction is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935. If it is a material factor, the claimant is "not disabled" as defined in the Act. *Drapeau v. Massanari*, 255 F.3d 1211, 1215 (10th Cir. 2001). The key factor in determining whether alcoholism or drug addiction is a contributing factor material to the claim "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Id.* Pursuant to the regulations, the ALJ must first apply the five-step sequential evaluation to determine whether the claimant's condition, including consideration of alcoholism or drug addiction is disabling, and then must evaluate whether a claimant's remaining limitations if he or she stopped using drugs or alcohol would be disabling. 20 C.F.R. § 416.935.

**I.     BACKGROUND**

Plaintiff filed for supplemental security income on July 5, 2006, alleging that her disability began on January 7, 2005. After her application was denied, plaintiff sought a review before the Administrative Law Judge, and a hearing took place on April 7, 2007.

In a decision issued on June 6, 2009, the ALJ determined Lightfoot suffered from the following severe impairments: polysubstance dependence, bipolar disorder, major depressive disorder, anxiety disorder, post-traumatic stress disorder and borderline, antisocial personality disorder. (Tr. at 13.) The ALJ found, however, that, if Lightfoot stopped her substance abuse, she would not have an impairment or combination of impairments that met or medically equaled any listing. (*Id.*) In arriving at this finding, the ALJ stated that, "full probative weight" had been given to the opinion of Dr. McNamara (Tr. at 16), who opined that Lightfoot had several extreme and marked impairments, which rendered her unable to fulfill the requirements of any employment (Tr. at 290-91). The ALJ found that, if Lightfoot stopped the substance abuse, she would have the residual functional capacity ("RFC") to perform work activity at all exertional levels, but with non-exertional limitations. (Tr. at 18.) The ALJ concluded that, if Lightfoot stopped the substance abuse, she could perform a significant number of jobs. (Tr. at 20-21.) Therefore, the ALJ found that Lightfoot was not disabled as defined in the Social Security Act. (*Id.*)

In his R&R, the Magistrate Judge found that the ALJ failed to properly articulate and explain how he weighed and read the opinion of plaintiff's treating physician, Dr. Nora McNamara, under 20 C.F.R. § 416.927. (Doc. 23 at 9-10.) The Magistrate Judge determined that it is unclear from the administrative record that the ALJ properly understood the opinion of Dr.

4

McNamara, contained in a form titled, "Assessment of Ability to do Work-Related Activities (Mental)." (Tr. at 290-91.) The form at issue contains the following instruction:

> If drug addition (sic) and alcoholism (henceforth "DAA") is a contributing factor material to the claimant's impairment, please confine your assessment to his condition if he stops using alcohol/drugs; if it's not possible to separate the mental restrictions and limitations imposed by DAA from various other mental disorders, there is a "not material" finding.

(Tr. at 290.) The ALJ stated that he gave the opinion full weight. The Magistrate Judge conclude that the ALJ arguably found that the opinion reflected Lightfoot's limitations with substance abuse and that Lightfoot would not meet a listing if she discontinued using drugs and alcohol. (Tr. at 15-16.) The Magistrate Judge found that, according to the form's express language, Dr. McNamara's opinion was one based on Lightfoot's impairments without substance abuse. (Doc. 23 at 9.) The Magistrate Judge stated that if the ALJ had read Dr. McNamara's assessment according to its own terms – that is as an opinion of plaintiff's limitations without substance abuse – and given it the appropriate weight, the opinion would have mandated a disability finding. (Doc. 23 at 10.) Thus, according to the Magistrate Judge, the ALJ's reading of Dr. McNamara's opinion was erroneous and necessarily required the ALJ to give an additional explanation and articulation concerning how he read the opinion and how it was being weighed pursuant to the treating physician rule. He recommended that the final decision of the Commissioner, adopting the decision of the ALJ, be remanded for further consideration of Dr. McNamara's treating physician evaluation. (Doc. 23 at 11.)

II.   DISCUSSION

The Commissioner objects to the R&R on two grounds. First, the Commissioner argues that the Magistrate Judge did not consider that substantial evidence supports the ALJ's finding that Dr. McNamara's opinion reflects Lightfoot's functioning with polysubstance abuse.

Second, the Commissioner asserts that the ALJ properly evaluated Lightfoot's "own ambiguous and insufficient form questionnaire," which the Commissioner alleges is confusing and required Dr. McNamara to make a legal finding reserved to the Commissioner.

In Reply, Lightfoot argues that defendant's objection makes a case in support of the conclusions of the Magistrate Judge by pointing out several ways the form completed by Dr. McNamara could be interpreted or misinterpreted. Lightfoot asserts that if the doctor's opinion was in fact confusing and subject to different interpretations, then the ALJ could not have properly and fully evaluated the opinion and was under a duty to resolve any ambiguities by recontacting Dr. McNamara for clarification. Further, Lightfoot argues that defendant's objection —that the form completed by Dr. McNamara, and drafted by plaintiff's counsel, is ambiguous and insufficient—is *post hoc* rationale offered by defendant only on appeal.

A.     Dr. McNamara's Opinion Concerning Lightfoot's Abilities

"A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' " *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (citing 20 C.F.R. § 404.1502). In this case, Dr. McNamara began seeing Lightfoot in August 2007 at Mental Health Services ("MHS"). Dr. McNamara and her staff continued to treat Lightfoot through at least April 2009. Indeed, neither party contests the ALJ's characterization of Dr. McNamara as a "treating source."

Lightfoot first began receiving treatment at MHS in February 2007. In October 2007, Lightfoot told her social worker that she had not used drugs or alcohol since December 2005. However, in January 2008, she informed Dr. McNamara, a psychiatrist at MHS, that she

had been evicted from her apartment due to charges of drug activity. (Tr. at 336.) Lightfoot denied any significant drug activity, but admitted to not being "clean." (Id.)

In February 2008, Dr. McNamara filled out a form entitled "Assessment of Ability To Do Work-Related Activities (Mental)" (hereinafter referred to as the "Ability Assessment"). (Tr. at 290-291) This form required Dr. McNamara to vocationally quantify how Lightfoot's mental limitations and impairments would affect her being on task in an 8-hour workday, and based on Lightfoot's psychiatric status, her ability to engage in various work-related activities on "a sustained basis in a routine work setting." A "marked" limitation was defined as a serious limitation that "severely limits ability to function (i.e., on task 48% - 82% in an 8 hr work day)." An "extreme" limitation was defined as a "major limitation with no useful ability to function (i.e., on task 0%-48% in an 8 hr work day)." The form instructions stated that,

> If drug addition (sic) and alcoholism (henceforth "DAA") is a contributing factor material to the claimant's impairment, please confine your assessment to his condition if he stops using alcohol/drugs; if it's not possible to separate the mental restrictions and limitations imposed by DAA from various other mental disorders, there is a "not material" finding.

Dr. McNamara rated Lightfoot's "estimated" degree of impairment as extremely limited in three evaluation areas and markedly limited in two evaluation areas (of six total evaluation areas).[1] Under the "sustained basis" section, Dr. McNamara indicated Lightfoot had an extreme inability to "understand, carry out and remember instructions," to "respond appropriately to supervision," to "respond appropriately to co-workers," to "respond to customary work pressures," to "use good judgment," and to "behave in an emotionally stable

---

[1] The specific areas rated "extreme" included: (2) estimated degree of restriction of daily activities; (5) estimated degree of impairment of the claimant's ability to sustain a routine without special supervision; and (6) estimated degree of impairment of the claimant's ability to perform activities within a schedule, maintain regular attendance, and be punctual. The specific areas rated "marked" included: (1) estimated degree of impairment of the claimant's ability to relate to other people; and (4) estimated degree of impairment of claimant's ability to maintain concentration and attention for extended periods.

manner," and she had a marked inability to "respond appropriately to changes in the work setting" and to "perform complex, repetitive, or varied tasks." (Tr. at 290-91.)

Following this assessment, Lightfoot missed follow-up appointments in February and March 2008, and acknowledged to Dr. McNamara in April 2008, that she had used cannabis. (Tr. at 333.) Subsequently, Dr. McNamara added a diagnosis of polysubstance abuse to Lightfoot's diagnoses on follow-up visits in May, June and July of 2008. (Tr. at 332, 330, 329.)

**B.    The Regulations Concerning Treating Source Opinions**

"The treating physician rule[2] occupies a special place in social security cases; indeed, treating physicians are 'likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.' " *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 656 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Blair v. Comm'r of Soc. Sec.*, No. 10-5104, 2011 WL 2728215, at *2 (6th Cir. July 14, 2011) (citing *Wilson v. Comm'r of Soc. Sec. Admin.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544.

---

[2] Interchangeably referred to by courts and the Social Security Administration as the "treating source rule."

Section 416.927(d)(2) also contains a clear procedural requirement: "We will always give *good reasons* in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* (emphasis added). A Social Security Ruling[3] explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). The requirement also ensures that the ALJ applies the treating source rule and permits meaningful review of the ALJ's application of the rule. *Id.*

## C. The ALJ Failed to Adhere to the Requirements of 20 C.F.R. § 416.927

At step three, the ALJ determined that Lighfoot's impairments, including substance abuse, met the criteria for impairment listed in 20 C.F.R. § 416.920(d). (Tr. at 15.) In reaching this conclusion, the ALJ relied solely on the Ability Assessment of Dr. McNamara and stated that he gave her opinion "full probative weight." (Tr. at 16.) As outlined above, Dr. McNamara rated Lightfoot's impairments as "extreme" with respect to daily activities, socializing, and sustaining a routine, regular attendance or punctuality, and she rated Lightfoot's

---

[3] The Social Security Administration defines Social Security Rulings as "a series of *precedential* decisions relating to the programs administered by the SSA and are published under the authority of the Commissioner of Social Security." *See* Social Security Ruling Definition, http://www.socialsecurity.gov/regulations/def-ssr.htm (last visited February 25, 2010) (emphasis in original).

impairments as "marked" with respect to relating to other people and maintaining concentration and attention for extended periods. The ALJ found, however, that Lightfoot had moderate restriction in activities of daily living, marked difficulties in maintaining social functioning, in concentration, persistence or pace, and no episodes of decompensation, of extended duration. (*Id*.) The ALJ stated, "*my* ratings of claimants "B" criteria are attributable to her substance use disorder during this period." (Tr. at 16) (emphasis added).

The Commissioner argues that substantial evidence supports the ALJ's reading of Dr. McNamara's opinion – that it reflects Lightfoot's limitations with substance abuse. The ALJ, however, did not discuss or articulate precisely how he was interpreting the form or how he used it in making his decisions beyond step three. Where, as here the ALJ gives full probative weight to the opinion of a treating source, then it is presumably because he found that it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544.

Here, however, the record reflects that the ALJ relied on statements by the claimant about past events and speculation of drug activity to support his conclusion that drugs or alcohol was responsible for the limitations reported by Dr. McNamara. In this regard, the ALJ noted that Lightfoot had acknowledged in October 2007 that "drugs" made her illness/problems worse and that she used drugs to help her self-esteem and to control people. These statements, nevertheless, are in reference to past events, and indeed, the form in which they appear notes the last time Lightfoot used drugs or alcohol was in December 2005 and that she had been "clean" for two years. In addition, the ALJ pointed out that Dr. McNamara noted in January 2008 that Lighfoot had been evicted from her apartment due to charges of drug activity. There is nothing in the record to indicate, however, that these allegations or charges were in fact substantiated or that

Lightfoot was criminally prosecuted in connection with the eviction. Further, although the ALJ noted that Lightfoot had admitted to not being clean at that time of the eviction, Lightfoot denied any significant drug activity. Finally, the ALJ cites as support the fact that Lighfooot missed two follow-up appointments. Nothing in the record, however, explains these missed appointments.

The only objective medical support for the ALJ's reading of Dr. McNamara's opinion is that Lightfoot admitted to Dr. McNamara during an April 2008 appointment that she smoked "weed," and Dr. McNamara subsequently added polysubstance abuse to Lightfoot's diagnosis at visits in May through July 2008. Dr. McNamara added this diagnosis, however, roughly three months *after* she had completed the Ability Assessment form. In short, no "medically acceptable clinical and laboratory diagnostic techniques" supports the ALJ's interpretation of Dr. McNamara's opinion.

To the contrary, substantial evidence supports Lightfoot's assertion that Dr. McNamara's opinion reflects her limitations *without* substance abuse. As reflected in the Magistrate's R&R, the literal language of the Ability Assessment form required Dr. McNamara to restrict her opinion to Lightfoot's impairments if she stopped using alcohol and/or drugs or if such use was not material to her impairment. Additionally, the record reflects that from early 2005 through the fall of 2007, Lightfoot's substance abuse was reportedly in remission. During this time she received treatment at MHS, and Dr. McNamara, who started following Lightfoot in August 2007, was able to observe her both during periods of sobriety and periods of substance abuse. As of the date she completed the Ability Assessment, Dr. McNamara had not diagnosed Lightfoot with polysubstance abuse. An ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir. 2006); *see also Rohan v.*

11

*Chater,* 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

The Court agrees with the Magistrate Judge's conclusion that, if the ALJ had in fact give Dr. McNamara's opinion full probative weight, then he would have necessarily concluded that Lightfoot's impairments were disabling in the absence of drugs and alcohol. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources' medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 SSR LEXIS 9 at *5 (*1996). The ALJ does not say one way or the other whether he was aware that Dr. McNamara's opinion was predicated on Lightfoot's impairments if she stopped substance abuse. Instead, it appears by implication from this record that the ALJ understood Dr. McNamara's Ability Assessment as a statement of Lightfoot's limitations with substance abuse and that consequently he provided his own estimate of what her abilities would be without substance abuse. This inconsistency is fatal to the ALJ's analysis because it deprives the sequential evaluation process of the support of substantial evidence at subsequent steps.[4]

The Commissioner objects to this conclusion, arguing that the form upon which Dr. McNamara noted her opinion was "ambiguous and insufficient," and that the ALJ properly evaluated that same form. The ALJ, however, did not indicate that he found Dr. McNamara's

---

[4] Dr. McNamara's opinion is the only medical opinion in the record regarding the extent of Lightfoot's limitations if she were to cease using drugs or alcohol. If the ALJ's erroneous reading of the opinion—that it reflects her limitations with substance abuse—was correct, the record would lack any medical or psychological report, opinion, or projection as to Lightfoot's remaining limitations if she discontinued using drugs or alcohol. Where the record lacks such evidence and the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, an ALJ "should find that [drug or alcohol addiction] is *not* a contributing factor material to the determination of disability." *Salazar v. Barnhart,* 468 F.3d 615, 623 (10th Cir. 2006) (emphasis in original)(citing 20 C.F.R. §§ 416.935(a), 416.935(b). Instead, the ALJ concluded just the opposite and found that substance abuse was a material factor and, therefore, Lightfoot was not disabled. This finding was thus not supported by substantial evidence.

opinion to be ambiguous and insufficient. To the contrary, the clear implication of his opinion is that he understood her opinion as that of Lightfoot's limitations without substance abuse. Indeed, if the ALJ was confused by Dr. McNamara's opinion or if he found it to be ambiguous, then Social Security regulations made it incumbent on him to recontact Dr. McNamara to resolve any inconsistencies, insufficiencies, or confusion in the medical evidence. 20 C.F.R. § 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved […].").

Because the ALJ credited Dr. McNamara's opinion with the full probative weight, but his conclusion is directly contradictory to that doctor's actual opinion, this Court finds that, in fact, the ALJ did not intend to give the treating physician's opinion controlling weight; and therefore, he was required to determine how much weight to give to the opinions by using "a set of factors that guides the weight given to the medical opinion, including treatment relationship, supportability, consistency, specialization, and other factors." *Martin v. Comm'r of Soc. Sec. Admin.*, 170 F. App'x 369, 372 (6th Cir. 2006) (citing Soc. Sec. R. 96-2p, 1996 SSR LEXIS 9 at *5 (1996); 20 C.F.R. § 416.927(d)(2)). Here, the ALJ's opinion is clearly deficient, as it fails to apply the factors established by the regulations due to his misunderstanding of the treating source's opinion.

The ALJ's failure to mention, consider, and weigh the opinion of a treating source is reversible error. *See, Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2010). Here, the ALJ's analysis is completely devoid of any good reason for failing to properly evaluate and consider Dr. McNamara's opinion, which was critical to his evaluation of whether Lightfoot's drug use/abuse was material to her disability and what limitations would remain if she ceased substance abuse. This was not harmless error; the error that occurred prevents

13

"meaningful review" by this Court, thus necessitating a reversal and remand to correct the error. *See, Wilson*, 378 F.3d at 544. Accordingly, this Court **ACCEPTS** the Magistrate Judge's R&R and the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commssioner for reconsideration of Dr. McNamara's treating physician evaluation in accord with its limiting terms, for proper articulation with respect to that opinion, and for findings at step three (and, if appropriate, steps four and five) consistent with this opinion.

### D.     Other Issues Not Addressed by the Magistrate Judge

The Magistrate Judge found it unnecessary to rule on other issues that were raised by Lightfoot. The plaintiff's response to the Commissioner's objections (Doc. 26) argues that these other issues also warrant a remand. In essence, plaintiff's response is an objection to the Magistrate Judge's decision not to consider these issues in the R&R. Any objection to the R&R must have been filed and served within fourteen (14) days of service of the report on the plaintiff. *See* 28 U.S.C. 636(b)(1)(C); Fed. R. Civ. P. 72(b). The R&R in this case was electronically filed on August 24, 2011, and objections were due by September 12, 2011. Plaintiff's objections contained in her response (Doc. 26), however, were not filed until September 15, 2011. Accordingly, plaintiff's objections are untimely and are OVERRULED.

### III. CONCLUSION

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge is **ACCEPTED**. The ALJ's decision denying Plaintiff Alicia Lightfoot's application for disability insurance benefits is **REVERSED** and **REMANDED** for reconsideration consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

Dated: September 22, 2011

                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**